

**MUNSCH HARDT
KOPF & HARR** PC
ATTORNEYS & COUNSELORS
Dallas | Houston | Austin

3800 Lincoln Plaza
500 N Akard Street
Dallas Texas 75201-6659
Main 214 855 7500
Fax 214 855 7584
munsch.com

Direct Dial 214.855.7502
Direct Fax 214.978.5352
Email: rhunt@munsch.com

May 25, 2012

<u>**VIA E-FILE**</u>

The Honorable Royal Furgeson, Jr.
United States District Court
Northern District of Texas - Dallas Division
1100 Commerce Street, Room 1452
Dallas, Texas 75242

    Re:    Case No.: 3:09-CV-00988-F; *Netsphere, Inc. et al. v. Jeffrey Baron, et al.*; In the United States District Court for the Northern District of Texas, Dallas Division

Dear Judge Furgeson:

    I am writing on behalf of the Trustee to respond to your Order of May 16, 2012 concerning ownership of the domain names "servers.com" and "petfinders.com."

**The relationship between registration of a domain name and ownership of the name.**

    The registrant is the owner of a domain name. The parties involved in the registration of domain names are Internet Corporation for Assigned Names and Numbers ("ICANN"), companies that act as registrars, and individual or corporate registrants. ICANN is responsible for administering domain names worldwide. Registrars provide the service of registering domain names. They operate under contract with ICANN and are accredited by it. Registrants are individuals and companies that want to have a domain name and register it with an accredited registrar.

    In essence, a registrar is a company that keeps a list of domain name owners, that is, the registrants. See *Kremen v. Cohen*, 387 F.3d 1024, 1029-1030 (9th Cir. 2003) [holding that the registrant of a domain name has a property right in that name.] and see *Office Depot, Inc. v. Zuccarini*, 621 F.Supp.2d 773, 777 (N.D. Cal. 2007). ["a registrant has 'an intangible property right in his [or her] domain name ....'"].[1]

---

[1] There is not universal agreement among the courts as to the nature of the interest of a registrant in a domain name. Some courts hold that a domain name is an intangible property right. Others say it is merely a collection of rights under the contract between the registrant and the registrar, subject to the registrar's contract with ICANN. See, *In re Forchion*, 198

The Honorable W. Royal Furgeson, Jr.
May 25, 2012
Page 2

There are so called "privacy services" that act as registrant for domain names on behalf of clients who wish to remain anonymous. In *Transamerica Corp. v. Moniker Online Services, LLC,* 672 F.Supp.2d 1353 (S.D. Fla. 2009) the Court explained how some services act as both registrar and registrant so that the identity of the person requesting registration of a domain name is not known. In other cases the privacy service is an affiliate of the registrar. In either case the "ownership" of the domain name depends on the contractual relationship between the privacy service as registrant and the person who requested registration of the name. For example, in *Solid Host, NL v. Namecheap, Inc.*, 652 F.Supp.2d 1092, 1096 (C.D.Cal. 2009) the contract between the privacy service and the person requesting registration gave the person requesting registration a license to use the domain name.[2] The customer was therefore only a licensee, not an owner of the domain name.[3] Because the nature of the customer's interest in a domain name depends on the customer's contract with the privacy service, the fact that the domain name was registered through a privacy service does not, by itself, answer the question of who owns it.

To summarize: the registrant of a domain name is the "owner" of the domain name whether the name is treated as "property" or as a bundle of contract rights. As between a privacy service that is the registrant and its customer the customer may be an owner (because the privacy service/registrant acts as a trustee) or merely a licensee. It depends on their contract.

As the registrant of the domain name "petfinders.com" Ondova was its owner in December of 2005. This much is conceded by Mr. Baron and Mr. Schepps in Case No. 3:12-cv-387 (See, Brief at pp. 2 and 6). With respect to servers.com the parties all appear to agree that the Trustee is presently registrant of the name in his capacity as receiver of Servers, Inc..

**Chain of Title for "petfinders.com"**

The chain of title for "petfinders.com" from December of 2005 until its recent sale is simple. It was registered during that entire time to Ondova and Ondova has always been its registrant and owner. Mr. Schepps and Mr. Baron propose a more elaborate chain of title, but have never presented any competent evidence of it.

---

Cal.App.4th 1284, 1309, 130 Cal.Rptr.3d 690, 709 (Cal.App. 2 Dist. 2011) [collecting authorities]. The distinction is not important in this case because "property of the estate" under Section 541 of the Bankruptcy Code includes contract rights. Thus, whether the Trustee "owns" intangible property rights or "owns" a contract right does not matter because in either case what the Trustee owns is "property of the estate."

[2] "NameCheap offers an anonymity service known as 'WhoisGuard,' whereby NameCheap becomes the registered owner of a domain name desired by a customer, and licenses the domain name to the customer." *Id.* at 1096.

[3] The Court characterized the privacy service as a "cyber-landlord" of internet real estate. *Id.* at 1115.

The Honorable W. Royal Furgeson, Jr.
May 25, 2012
Page 3

The following chart shows Mr. Schepps' version of the chain of title for "petfinders.com."



As this chart shows, there are two gaps in the chain of title proposed by Baron and Mr. Schepps. They propose to bridge them with an Assignment dated December 30, 2005 (the "Assignment") and the Settlement Agreement of July 28, 2010 (the "Settlement Agreement").

The Assignment[4] cannot bridge the first gap because it never mentions the domain name "petfinders.com." Under the terms of the Assignment certain names "subject to active claims" on the date of the Assignment are excluded from the assignment. *There is no evidence in the record* that "petfinders.com" was or was not subject to active claims[5], and therefore no evidence as to whether it was or was not assigned. The Assignment, standing alone, cannot bridge the gap in the proposed chain of title, and an unauthenticated copy of the Assignment is all the Court has.

---

[4] The Assignment may be found in the Record for case 3:12-c-00387 at pages 314-315. It appears only as an unsworn attachment to one of the papers filed by Mr. Schepps. This deficiency in the record is by itself sufficient to require dismissal of the appeal and any other proceeding that relies on the Assignment.

[5] There is an unsworn assertion to the effect that petfinders.com was not subject to an active claim in many of the papers filed by Mr. Schepps, but despite many opportunities, no witness has been willing to affirm that this is true under oath.

The Honorable W. Royal Furgeson, Jr.
May 25, 2012
Page 4

      The Court does know, because it is undisputed, that Ondova continued to be the registrant for "petfinders.com" from December 30, 2005 until "petfinders.com" was sold pursuant to bankruptcy court order in the fall of 2011. This is not consistent with an assignment of the name to Macadamia Management. The Assignment provides that the assignor, Ondova, "will take any additional steps necessary to register the Assets in Assignee's name over a reasonably practicable time period. . .." (Record in Case No. 3:12-cv-00387 at p. 315). From December of 2005 to September of 2009 Ondova was under the control of Mr. Baron, but never re-registered "petfinders.com" to Macadamia Management. That failure to change the registration for almost three years is strong evidence that "petfinders.com" was not among the names assigned to Macadamia Management.

      Baron and Schepps have asserted that Ondova did not change the registration of "petfinders.com" because Ondova was acting as a privacy service[6]. This claim directly contradicts the terms of the Assignment, which calls for a transfer of registration. Equally important, there is no evidence in the record of a contract between Macadamia Management and Ondova for the provision of privacy services[7]. As noted above, only such a contract could create an ownership interest in Macadamia Management without the actual re-registration of the domain name to Macadamia Management. The absence of a privacy service contract is further very strong evidence that "petfinders.com" was never among the names assigned to Macadamia Management.

      There is also no evidence that the Settlement Agreement can bridge the second gap in the chart above. In fact, the Settlement Agreement proves that "petfinders.com" was not transferred to Macadamia Management. This was briefed in detail at pages 6 and 7 of the Trustee's Brief on Appeal in Case No. 3:12-cv-00387, Document 21. As shown there, "petfinders.com" was specifically excluded from the mass transfers of domain names to Novo Point called for the by Settlement Agreement. There is no evidence that "petfinders.com" was ever assigned either to Macadamia Management or to Novo Point, and strong evidence that it was not. It was the property of Ondova from 2005 until its sale last fall.

**Chain of Title for "servers.com"**

      The relevant portion of the title chain for "servers.com" begins in July of 2009, shortly before Ondova filed for bankruptcy protection. At that time "servers.com" was registered to Ondova, but Mike Emke claimed an interest in the name. A few weeks before the bankruptcy filing Emke and Ondova reached a settlement agreement (the "Servers Settlement") under whose terms the domain name was to be transferred to a new entity, Servers, Inc. (Trustee's Trial

---

[6] See, Novo Point's Reply in Support of Emergency Motion to Stay in Fifth Circuit Case No. 10-11202 at p. 10.

[7] In this case there are not even any unauthenticated documents or assertions about the existence of a written contract in any of the papers filed by Mr. Schepps.

The Honorable W. Royal Furgeson, Jr.
May 25, 2012
Page 5

Exhibit 1, Record in Case No. 3:12-cv-00367 at p. 308). That transfer was delayed because of the bankruptcy, but ultimately took place in January of 2010, when "servers.com" was registered in the name of Servers, Inc.. (Trustee's Trial Exhibit 35, Record in Case No. 3:12-cv-00367 at p. 500).

In early 2011 the Trustee sued Mr. Emke to enforce the Servers Settlement and compel the sale of the domain name. In the course of that litigation the Bankruptcy Court became concerned that Mr. Emke's control of the domain name through Servers, Inc. was unsafe, and so the domain name registration was transferred to the Trustee[8]. At the conclusion of the case the Trustee was appointed as receiver of Servers, Inc. and authorized to sell "servers.com." (Record in Case No. 3:12-cv-00367 at 605). It has not been sold and remains registered to the Trustee, now acting as receiver for Servers, Inc. The chain of title based on registration appears as follows:



None of this is disputed. Instead, Mr. Baron claims that upon the appointment of the Trustee as receiver for Servers, Inc. an *ipso facto* clause in the Servers Settlement caused ownership of Ondova's interest in "servers.com" to automatically vest in Mr. Baron. The errors in this argument are described in the Trustee's Brief on Appeal in Case No. 3:12-cv-367 (Document No. 14). The *ipso facto* clause is unenforceable under Section 541(c) of the Bankruptcy Code. Moreover, it was Ondova, not Mr. Baron that owned the name before the Servers Settlement was signed. Mr. Baron had no interest in the domain name and therefore gave up nothing when it was transferred to Servers, Inc. Giving it to him based on the *ipso facto* clause would be a transfer without consideration and would be avoidable as fraudulent under Section 548 of the Bankruptcy Code and Chapter 24 of the Texas Business & Commerce Code.

---

[8] See, Order of August 15, 2011, Docket No. 87 in Adversary Proceeding 11:03181-sgj.

The Honorable W. Royal Furgeson, Jr.
May 25, 2012
Page 6

**Conclusion**

As the registrant of "petfinders.com" Ondova was its owner until it sold "petfinders.com" pursuant to the order of the Bankruptcy Court. The Trustee, acting in his capacity as receiver of Servers, Inc., is the registrant and owner of "servers.com." There is no evidence at all that "petfinders.com" was ever transferred to Macadamia Management or to Novo Point; in fact, the evidence strongly contradicts that claim. There has been no automatic transfer of "servers.com" to Mr. Baron because the provisions in the Servers Agreement on which he relies are not enforceable under either state law or the provisions of the Bankruptcy Code.

Very truly yours,

Richard M. Hunt